## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **REED GINN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NO:** |
| **v.** | ) | _____ |
| | ) | |
| **E-VERIFILE.COM, INC,** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **Defendant.** | ) | |
| | ) | |
| | ) | |
| | ) | |

## CLASS ACTION COMPLAINT

PLAINTIFF REED GINN files this Class Action Complaint and states as follows:

1.     Mr. Ginn brings this action against Defendant E-Verifile.com, Inc. for multiple violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA").

2.     Congress passed the FCRA to protect consumers from the harm caused by inaccurate reporting.  To this end, the FCRA requires that all consumer reporting agencies (CRAs) that report criminal background information to employers use "reasonable procedures to ensure maximum possible accuracy of the information concerning the individual about whom the report relates."  15 U.S.C. § 1681e(b).

3.    The FCRA provides special protections when a CRA furnishes "items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment." 15 U.S.C. § 1681k.  In these situations, CRAs must either: (1) notify the consumer of the release of the public record information at the time the information is furnished to the user; or (2) establish strict procedures to maintain complete and up-to-date public record information.

4.    Defendant violated Sections 1681e(b) and 1681k of the FCRA when it published incomplete, inaccurate and/or not up-to-date public record information about Mr. Ginn in an employment background report.  As a result of Defendant's inclusion of this information in a consumer report, Mr. Ginn lost a job and suffered emotional distress.

5.    Congress also sought to protect consumers by ensuring that CRAs take appropriate action when they receive notice from a consumer that they have reported inaccurate information.   In particular,

> if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file

in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

15 U.S.C. § 1681i(a)(1)(A).

6.    Section 1681i also requires that, "If, after any reinvestigation under paragraph (1) of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall—(i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation."  15 U.S.C. § 1681i(a)(6)(A).

7.    It further requires that, "A consumer reporting agency shall provide written notice to a consumer of the results of a reinvestigation under this subsection not later than 5 business days after the completion of the reinvestigation, by mail or, if authorized by the consumer for that purpose, by other means available to the agency."  15 U.S.C. § 1681i(a)(5)(A).

8.    A CRA must include in this notice:

- a statement that the reinvestigation is completed;
- a consumer report that is based upon the consumer's file as that file is revised as a result of the reinvestigation;
- a notice that, if requested by the consumer, a description of the procedure used to determine the accuracy and completeness of the information shall be provided to the consumer by the agency, including the business name and address of any furnisher of

information contacted in connection with such information and
the telephone number of such furnisher, if reasonably available;
•  a notice that the consumer has the right to add a statement to
the consumer's file disputing the accuracy or completeness of the
information; and
•  a notice that the consumer has the right to request under
subsection (d) that the consumer reporting agency furnish
notifications under that subsection.

15 U.S.C. § 1681i(a)(6)(B).

9.    Defendant violated Section 1681i when it failed to conduct a
reasonable reinvestigation, failed to delete the inaccurate information from Mr.
Ginn's file, failed to notify Mr. Ginn of the results of its reinvestigation, and failed
to provide him with the statutorily-required notices.

10.    In addition, section 1681g of the FCRA requires that every CRA
"shall, upon request, and subjection to section 1681h(a)(1) of this title, clearly and
accurately disclose to the consumer: (1) All information in the consumer's file at
the time of the request."

11.    Section 1681g "is the pivotal section regarding the disclosure of the
consumer's file." *Taylor v. Screening Reports, Inc.*, 294 F.R.D. 680 (N.D. Ga.
2013) (*quoting Nunnally v. Equifax Info. Servs., LLC*, 451 F.3d 768 (11th Cir.
2006)).  By giving consumers the right to access the information in their files,
section 1681g serves two important purposes: it allows consumers to confirm that
the information in their consumer file is accurate, and it provides them with the

information necessary to know who to contact if it is not.  Indeed, Congress "felt that it was necessary to give consumers a specific statutory right to acquire such information on sources" because in some cases it "may be the only way in which the consumer can effectively" correct mistakes.  116 Cong. Rec. 35,940 (1970); *see also Gillespie v. Equifax Info. Servs.*, *L.L.C.*, 484 F.3d 938, 941 (7th Cir. 2007) ("A primary purpose of the statutory scheme provided by the disclosure in § 1681g(a)(1) is to allow consumers to identify inaccurate information in their credit files and correct this information *via* the grievance procedure established under § 1681i.").

12.    Defendant violated Section 1681g of the FCRA when it failed to provide Mr. Ginn with his consumer file following his request.

13.    Mr. Ginn suffered concrete harm as a result of Defendant's failure to provide him with his consumer file.  Defendant deprived Plaintiff of information he is entitled to receive under the FCRA.  As a result, Mr. Ginn has been unable to verify and/or dispute the information that Defendant maintains in its files about him.

## JURISDICTION AND VENUE

14.    This Court has federal question jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

15.    Venue is proper in this Court under 28 U.S.C. § 1391(b) as Defendant is headquartered in and regularly conducts business in this district and division and a substantial part of the events giving rise to the claims occurred in this district and division.

16.    Defendant has contracted to supply services or things in Georgia. It sells consumer reports in Georgia and produces consumer reports on Georgia residents. It also gathers and maintains substantial public records data from Georgia.

## PARTIES

17.    Mr. Ginn is a resident of Nevada. He is a natural person and a "consumer" as protected and governed by the FCRA, 15 U.S.C. § 1681a(c).

18.    Defendant is a Georgia corporation that conducts business throughout the United States.

19.    At all relevant times hereto, Defendant was a consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f).

## FACTUAL ALLEGATIONS

20.    In early 2017, Mr. Ginn applied for a job in engineering with ProKarma.

21.    On or about February 24, 2017, Mr. Ginn accepted ProKarma's offer of employment at an annual salary of approximately $85,000, pending the successful completion of a background check.

22.    That same day, Mr. Ginn received an email from ProKarma congratulating him and welcoming him to the team.  The email also discussed the benefits Mr. Ginn would receive at the new job.

23.    Upon information and belief, ProKarma ordered a consumer report on Mr. Ginn from Defendant through eRailSafe.

24.    The consumer report that Defendant furnished to ProKarma through eRailSafe was used or expected to be used or collected for the purpose of evaluating a consumer for employment purposes.

25.    The consumer report that Defendant furnished to ProKarma through eRailSafe contained public record information likely to have an adverse effect on Mr. Ginn's ability to obtain employment.

26.    Defendant did not provide Mr. Ginn with notice of the fact that it was reporting adverse public record information about him at the time it furnished the information to ProKarma.

27.    After several discussions with ProKarma about a start date, Mr. Ginn emailed ProKarma on March 22, 2017: "I am just touching base and checking

in.  I will be there on Monday the 27th at 8:30 am.  I have everything together and am on the way.  I look forward to starting work and doing well."

28.    Later on March 22, 2017, ProKarma informed Mr. Ginn that he had not passed the background check and, therefore, it could not move forward with his employment.

29.    After requesting a copy of his background check, on March 24. 2017, Mr. Ginn received it from ProKarma.

30.    Mr. Ginn was extremely dismayed by what he saw.

31.    According to the consumer report, Mr. Ginn had been convicted of two felonies on August 30, 2013, including a fine of $300 and a special assessment of $25.00.

32.    This information was not correct.

33.    Mr. Ginn had not been convicted of any felonies, let alone two felonies.

34.    Shocked by being labeled as a felon to his prospective employer, on March 25, 2017, Mr. Ginn reached out to ProKarma and told that there must be a mistake as he had never been convicted of a felony.

35.    ProKarma informed Mr. Ginn that he would need to address the issue with Defendant.

36.    Thus, on March 28, 2017, Mr. Ginn contacted Defendant via email to dispute the information in his consumer report.

37.    Having not received any results to his dispute, Mr. Ginn contacted Defendant again via email on April 17, 2017 to dispute the information a second time.

38.    After clarifying the specific information that Mr. Ginn wished to dispute, Defendant emailed Mr. Ginn and told him that it "obtained the information on the report from the respective courthouse."

39.    Defendant's statement was not true.

40.    Had Defendant obtained the records from the courthouse, it would have seen that the records did not reflect any felony convictions, as it reported.

41.    On April 20, 2017, Defendant confirmed that Mr. Ginn had disputed the accuracy of the information in its consumer report.

42.    On May 5, 2017, Defendant emailed Mr. Ginn:

Upon reinvestigation, charge ID 81913775-91866528 "Assimiating Section Possession of a Forged Instrument" remains listed as a felony. Charge ID 81913775-F9DDD42A "Possession of a Forged Instrument" has been downgraded to a misdemeanor.

The dispute is now closed.

43.    Not only had Defendant failed to correct both of the inaccuracies in its consumer report, but it also failed to provide Mr. Ginn with any of the notices

required by 15 U.S.C. § 1681i(a)(6)(B), including a copy of the amended consumer report.

44.    Because Defendant failed to correct Mr. Ginn's report, it forced Mr. Ginn to file a second dispute.

45.    On May 8, 2017, Defendant confirmed that it received notice of Plaintiff's second dispute.

46.    On June 19, 2017, Mr. Ginn emailed Defendant because he had not received the results of any reinvestigation: "I am touching base as I have not had word on this matter up to this point.  It may be your hope/plan that this will go away for you, but I assure you it won't.  I will be awaiting the results of your process."

47.    On June 20, 2017, Defendant confirmed that it had neglected to respond to Mr. Ginn about the dispute: "We apologize. Your re-opened dispute has been closed. We emailed the company who ordered your report, but neglected to email you. We will send you an email regarding your re-opened dispute immediately."

48.    That same day, Defendant emailed Mr. Ginn:

Upon reinvestigation, the above charge has been reduced to a misdemeanor. As a whole, your background report has been amended to show that both charges of case 5:13-CR-283-HGD (charge ID 81913775-91866D28 and charge ID 81913775-F9DDD42A) have been downgraded to misdemeanors.

The dispute is now closed.

49.    Not only did Defendant fail to provide Mr. Ginn with notice of the results of its reinvestigation within the statutorily-required timeframe, but, once again, Defendant failed to provide Mr. Ginn with any of the notices required by 15 U.S.C. § 1681i(a)(6)(B), including a copy of the amended consumer report.

50.    Unfortunately for Mr. Ginn, Defendant's corrections were too little, too late, as ProKarma has failed to move forward with the position it had previously offered to Mr. Ginn.

51.    Following this series of an inaccurate report and botched disputes, Mr. Ginn was worried about the information Defendant had in its files about him, and which it could potentially disseminate to his prospective employers.  He was also worried that Defendant may have sent inaccurate reports to other prospective employers, which he did not know about.  So, on July 12, 2017, Mr. Ginn sent a certified mail request to Defendant:

> I recently learned that eVerifile issued a background report about me.  Accordingly, I am writing to request a copy of my complete eVerifile file, including the sources of any information, a list of all employers or other entities to which you sent reports about me, and copies of all such reports.

52.    Defendant signed for Mr. Ginn's request on July 18, 2017 at 3:43 p.m.

53.    To this day, Defendant has failed to respond to Mr. Ginn's request.

54.    Defendant's failure to respond has injured Mr. Ginn.  Critically, had Mr. Ginn known what was in his file, he could try to stop it from being disseminated by Defendant.

55.    Notwithstanding    the    FCRA's    pellucidly-clear    requirements, Defendant deprived Mr. Ginn of this valuable information, according to its standard practice and procedure.

## CLASS ACTION ALLEGATIONS

56.    Defendant routinely fails to clearly and accurately disclose to consumers (1) all information in their file, (2) the sources of the information, and (3) identification of each person that procured a consumer report.

57.    Defendant's failure to do so injures the consumers and interstate commerce as a whole, as it deprives consumers of valuable information and prevents them from disputing and correcting potentially inaccurate, incomplete, and/or outdated adverse information.

58.    Defendant's failure to comply with Section 1681g further injures consumers by preventing them from knowing the information that Defendant is reporting to prospective employers prior to the time it is reported, thus potentially injuring their job prospects.

59.    Accordingly, Mr. Ginn brings this action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the following Class:

> All persons residing in the United States (including all Territories and other political subdivisions of the United States) who, beginning two years prior to the filing of the Complaint and continuing through the resolution of this action, requested that Defendant provide a consumer file disclosure.

60.    Plaintiff reserves the right to amend the definition of the Class based on discovery or legal developments.

61.    **Numerosity. FED. R. CIV. P. 23(a)(1).**  The Class members are so numerous that joinder of all is impractical.  Upon information and belief, Defendant receives tens if not hundreds of requests for file disclosures each year, and those persons' names and addresses are identifiable through documents maintained by Defendant.

62.    **Existence and Predominance of Common Questions of Law and Fact. FED. R. CIV. P. 23(a)(2).**  Common questions of law and fact exist as to all members of the Class and predominate over the questions affecting only individual members.  The common legal and factual questions include, among others, whether Defendant willfully violated section 1681g by failing to provide a consumer file disclosure on request from consumers.

63.    **Typicality.  FED. R. CIV. P. 23(a)(3).**  Plaintiff's claims are typical of the claims of each Class member.  Plaintiff has the same claims for statutory

and punitive damages as Class members, arising out of Defendant's common course of conduct.

64. **Adequacy. FED. R. CIV. P. 23(a)(4).** Plaintiff is an adequate representative of the Class. His interests are aligned with and not antagonistic to, the interests of the members of the Class he seeks to represent, he has retained counsel competent and experienced in such litigation, and he intends to prosecute this action vigorously. Plaintiff and his counsel will fairly and adequately protect the interests of the members of the Class.

65. **Predominance and Superiority. FED. R. CIV. P. 23(b)(3).** Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to

the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding

## FIRST CLAIM FOR RELIEF

## (15 U.S.C. § 1681e(b)-Individual)

66.    Plaintiff realleges Paragraph Nos. 1-65 as if fully set forth herein.

67.    Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer report furnished regarding Plaintiff.

68.    Defendant knew or should have known about its obligations under the FCRA. These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case law.

69.    Defendant obtained or had available substantial written materials that apprised it of its duties under the FCRA.

70.    Despite knowing of these legal obligations, Defendant acted consciously in breaching its known duties and deprived Plaintiff of his rights under the FCRA.

71.    Defendant's violations of the FCRA were willful, rendering Defendant liable pursuant to 15 U.S.C. § 1681n.  In the alternative, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

72.    As a result of this conduct, Plaintiff suffered actual damages including without limitation, by example only and as described herein on his behalf by counsel: loss of employment, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

## SECOND CLAIM FOR RELIEF

### (15 U.S.C. § 1681k-Individual)

73.    Plaintiff realleges Paragraph Nos. 1-65 as if fully set forth herein.

74.    Section 1681k of the FCRA requires that when a consumer reporting agency supplies public record information to a user for employment purposes, and such information is likely to have an adverse effect on employment, the CRA must:

> (1)  at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported; or

> (2) maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date.

75.    Defendant violated 15 U.S.C. § 1681k by failing to notify Plaintiff that it was reporting public record information about him at the time it furnished such information to his employer, and failing to maintain strict procedures to ensure that the public record information it was reporting was complete and up to date.

76.    Defendant knew or should have known about its obligations under the FCRA.  These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case law.

77.    Defendant obtained or had available substantial written materials that apprised it of its duties under the FCRA.

78.    Despite knowing of these legal obligations, Defendant acted consciously in breaching its known duties and deprived Plaintiff of his rights under the FCRA.

79.    Defendant's violation of 15 U.S.C. § 1681k was willful, rendering Defendant liable pursuant to 15 U.S.C. § 1681n.  In the alternative, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

80.    As a result of this conduct by Defendant, Plaintiff suffered actual damages including without limitation, by example only and as described herein on

his behalf by counsel: loss of employment, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

## THIRD CLAIM FOR RELIEF

### (15 U.S.C. § 1681i-Individual)

81.     Plaintiff realleges Paragraph Nos. 1-65 as if fully set forth herein.

82.     Defendant violated 15 U.S.C. § 1681i by, among other things, failing to (1) "conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller," (2) notify Plaintiff of the reinvestigation results within the statutorily-required timeframe, and (3) provide to Plaintiff the notices required under 15 U.S.C. § 1681i(a)(6).

83.     Defendant knew or should have known about its obligations under the FCRA.  These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case law.

84.     Defendant obtained or had available substantial written materials that apprised it of its duties under the FCRA.

85.    Despite knowing of these legal obligations, Defendant acted consciously in breaching its known duties and deprived Plaintiff of his rights under the FCRA.

86.    Defendant's violation of the FCRA was willful, rendering Defendant liable pursuant to 15 U.S.C. § 1681n.  In the alternative, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

87.    As a result of this conduct by Defendant, Plaintiff suffered actual damages including without limitation, by example only and as described herein on his behalf by counsel: loss of employment, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

## FOURTH CLAIM FOR RELIEF

### (15 U.S.C. § 1681g-Class)

88.    Plaintiff realleges Paragraph Nos. 1-65 as if fully set forth herein.

89.    Pursuant to 15 U.S.C. § 1681g(a), a consumer reporting agency "shall, upon request, and subject to section 1681h(a)(1) of this title, clearly and accurately disclose to the consumer: (1) All information in the consumer's file at the time of the request . . . (2) The sources of the information . . . (3)(a) Identification of each person (including each end-user identified under section 1681e(e)(1) of this title) that procured a consumer report."

90.    The FCRA defines "file" as "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." 15 U.S.C. § 1681a(g).

91.    Pursuant to 15 U.S.C. §§ 1681n and 1681o, Defendant is liable for failing to provide consumers with file disclosures, as required by 15 U.S.C. § 1681g(a).

92.    Defendant's violation of 15 U.S.C. § 1681g(a) was willful.

93.    Defendant knew about its legal obligation under 15 U.S.C. § 1681g(a). These obligations are well established in the plain language of the FCRA and in the statute's regulations.

94.    Additionally, Defendant obtained or had available substantial written materials that apprised it of its duties under the FCRA.

95.    Despite knowing of these legal obligations, Defendant acted consciously in breaching its known duties and deprived Plaintiff and other putative class members of their rights under the FCRA.

96.    At all times pertinent hereto, Defendant's conduct was a result of its deliberate policies and practices, was willful, and was carried out in reckless disregard for a consumer's rights as set forth in 15 U.S.C. § 1681g(a), and further assumed an unjustifiably high risk of harm.

97.    Defendant's conduct was not a mere mistake or accident.  Instead, it was the intended result of its standard operating procedures.

98.    As a result of these FCRA violations, Defendant is liable to Plaintiff and to each putative class member for statutory damages from $100.00 to $1,000.00, punitive damages, as well as their attorneys' fees and costs pursuant to 15 U.S.C. § 1681n.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

        a.  An order certifying the case as a class action on behalf of the proposed Class under Federal Rule of Civil Procedure 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

        b.  An award of actual, statutory and punitive damages for Plaintiff and the Class;

        c.  An award of pre-judgment and post-judgment interest as provided by law;

        d.  An award of attorney's fees and costs; and

        e.  Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

**PLAINTIFF hereby demands a jury trial on all claims for which he has a right to a jury.**

DATED: September 5, 2017

By: /s/ Andrew L. Weiner

Andrew L. Weiner
Georgia Bar No. 808278
Jeffrey B. Sand
Georgia Bar No. 181568
THE WEINER LAW FIRM LLC
3525 Piedmont Road
7 Piedmont Center, 3rd Floor
Atlanta, Georgia 30305
(404) 205-5029 (Tel.)
(404) 254-0842 (Tel.)
(866) 800-1482 (Fax)
aw@atlantaemployeelawyer.com
js@atlantaemployeelawyer.com

COUNSEL FOR PLAINTIFF AND
THE PUTATIVE CLASS